**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

In re:

**WARDLEY CORPORATION,**

    **Involuntary Debtor,**

_____

**CINDY L. THOMPSON,**

    **Petitioning Creditor/Appellee.**

Case No. 12:12-cv-01075-TS

Bankruptcy Case No.
09-29171 RKM
(Involuntary Chapter 7)

---

## BRIEF OF APPELLANT

---

| | |
|---|---|
| John T. Anderson (#0094)<br>**ANDERSON & KARRENBERG, PC**<br>50 West Broadway, Suite 700<br>Salt Lake City, UT 84101<br>Telephone: (801) 534-1700<br>Facsimile: (801) 364-7697<br>**Counsel for Appellant, Lynn Wardley** | Cindy L. Thompson, Pro Se<br>1718 West Joust Court<br>Salt Lake City, Utah 84116<br>**Cindy L. Thompson, Appellee** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... iii

STATEMENT OF APPELLATE JURISDICTION ................................................ 1

STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW ........................ 1

STATEMENT OF CASE .................................................................................... 2

STATEMENT OF FACTS .................................................................................... 3

SUMMARY OF ARGUMENT .............................................................................. 8

ARGUMENT ..................................................................................................... 9

CONCLUSION ................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Applied Med. Technologies, Inc. v. Eames,* 2002 UT 18, ¶ 11, 44 P.3d 699................................11

*In re Broadband Wireless Intern. Corp.,* 295 B.C. 140 (B.A.P. 10th Cir. 2003) ............................1

*In re Cluff,* 313 B.R. 323 (Bankr. D. Utah 2004) ..................................................................12, 13

*Donatelli v. Beaumont,* 2009 UT App. 34, 204 P. 3d 201 ...........................................................13

*Excel Corp. v. Jiminez,* 7 P. 3d 1118 (Kan. 2000).......................................................................12

*Frank Lyon Co. v. United States,* 435 U.S. 561 (1978) ................................................................12

*In re Harrison,* 987 F.2d 677 (10th Cir. 1993) ...........................................................................12

*Lippoldt v. Cole,* 468 F. 3d 1204 (10th Cir. 2006)......................................................................10

*Lowe v. Experian,* 328 F. Supp.2d 1122 (D. Kan 2004)...............................................................12

*Manning v. United States,* 146 F.3d 808 (10th Cir. 1998)............................................................1

*In re Melillo,* 392 B.R. 1(B.A.P. 1st Cir. 2008)........................................................................10

*Moon Lake Water Users Ass'n v. Hanson,* 535 P.2d 1262 (Utah 1975)........................................15

*Nielsen v. Spencer,* 2008 UT App. 375, 196 P.3d 616 ................................................................13

*Park City Corp. v. Ensign,* 586 P.2d 446 (Utah 1978) ................................................................15

*Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239 (Utah App. 1991).......................................15

*RMA Ventures California v. SunAmerica Life Ins. Co.* 576 F. 3d 1070 (10th Cir. 2009) ..............10

*In re Simon Transp. Services, Inc.,* 292 B.R. 207 (Bankr. D. Utah 2003)......................................12

*In re Summerman,* 463 B.R. 47 (Bankr. S.D. Ohio 2011).............................................................10

*In re Viencek,* 273 B.R. 354 (Bankr. N.D.N.Y. 2002)..................................................................10

**Rules**

Utah R. Civ. P. 58(e)...........................................................................................................3, 15

Utah R. Civ. P. 64E ................................................................................................11

Utah R. Civ. P. 69 .................................................................................................11

Bankr. Rule 3001(a) ...............................................................................................9

Bankr. Rule 3001(e)(1) .........................................................................................10

Bankr. Rule 3001(f) ..............................................................................................12

**Statutes**

11 U.S.C. § 101(5)(A) .............................................................................................9

11 U.S.C. § 101(10)(A) ...........................................................................................9

11 U.S.C. § 303 .......................................................................................................5

11 U.S.C. § 502(b)(1) ..............................................................................................9

28 U.S.C. §§ 158(a) ................................................................................................1

28 U.S.C. §§ 158(c)(1)(A) .......................................................................................1

**Other Authorities**

9A Am. Jur. 2d, Bankruptcy § 2537 (2006) .............................................................9

**Addendum**

1. Judgment, dated December 13, 2005

2. Judgment, dated August 2, 2006

3. Third Amended Proof of Claim, dated June 15, 2012

4. Findings of Fact and Conclusions of Law in Support of Order Allowing Cindy L. Thompson Claim and Order, dated November 9, 2012

5. First Amended Complaint, dated March 19, 2004

6. Special Verdict, dated November 17, 2005

7. Papers filed by Delano Findlay in Judge Peuler Case

8. Official Transcript of September 12, 2012 Evidentiary Hearing

9.      Judgment, dated April 10, 2009

10.     Certificate of Sale, Execution, Personal Property, dated August 19, 2009

11.     Papers Filed by Cindy Thompson in Judge Peuler Case.

12.     Memorandum in Support of Thompson's December 18, 2010 Motion for Amendment or for Clarification of Orders

13.     Memorandum in Opposition to Thompson's Motion for Amendment or Clarification of Orders

14.     Notice of Withdrawal of Motion for Amendment or Clarification of Orders

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(a) and (c)(1)(A).

## STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW

1.      Whether the bankruptcy court erred in allowing the portion of a proof of claim filed by appellee, Cindy Thompson ("Thompson"), that sought to recover an attorney fee award that her lawyer conceded belonged to him, and not to Thompson.[1]

The factual findings underlying a bankruptcy court's resolution of a proof of claim are "subject to a clearly erroneous standard of review." *In re Broadband Wireless Intern. Corp.,* 295 B.R. 140, 143-44 (B.A.P. 10th Cir. 2003). "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Id.* (quoting *Manning v. United States,* 146 F.3d 808, 812 (10th Cir. 1998)).

A bankruptcy court's legal determinations are reviewed *de novo,* with "no form of appellate deference." *Broadband Wireless,* 295 B.R. at 143.

2.      Whether the bankruptcy court erred in allowing Thompson to recover pre-judgment interest where (a) the judgment on which her proof of claim was based neither qualified for such interest under Utah law nor expressly awarded such interest, and (b) Thompson repeatedly acknowledged in the state court case that pre-judgment interest had not been awarded.[2]

The factual findings underlying a bankruptcy court's resolution of a proof of claim are "subject to a clearly erroneous standard of review." *Broadband Wireless,* 295 B.R. at 143-44.

---

[1] This issue was preserved below at *Dkt. No.* 251; 9/12/12 Tr. of Hearing ("Tr.") at 4-9, 20-35.

[2] This issue was preserved below at *Dkt. No.* 251; *Tr.* at 19, 20.

A bankruptcy court's legal determinations are reviewed *de novo,* with "no form of appellate deference." *Id.* at 143.

## STATEMENT OF CASE

### Nature of Case

This case involves an involuntary bankruptcy petition in which the bankruptcy court allowed a creditor's proof of claim for amounts far beyond what was recoverable under the two state court judgments on which the claim was based.

### Course of Proceedings and Disposition

In 2005 and 2006, Thompson obtained two judgments against Wardley Corporation ("WC") in Utah state court ("2005 Judgment" and "2006 Judgment," respectively).[3] *See,* Appellant's Appendix ("App.") at Exs. 1, 2. To collect the Judgments, Thompson placed WC in involuntary bankruptcy in 2009. *Dkt. No. 1.* A trustee was appointed for WC in 2011. *Dkt. No.* 141.

In 2012, WC's principal shareholder and president, Lynn Wardley ("Wardley"), reached an agreement with WC's trustee to settle potential claims relating to Wardley's late-2010 receipt of $350,000 from a third-party. *Dkt. No. 283.* Under the settlement, Wardley paid $190,000 to the trustee with the understanding that Wardley would be refunded any amounts remaining on deposit at the conclusion of the case. *Id.*; *Dkt. No.* 213 at p. 4 of Ex. A, ¶ 4.

Thompson filed several proofs of claim based on the Judgments, culminating in a Third Amended Proof of Claim ("Proof of Claim"). *Claim No. 2-4, App.* at Ex. 3. Wardley filed detailed objections to the Proof of Claim in July 2012, and the bankruptcy court conducted an evidentiary hearing on the objections two months later. *Dkt. No. 251.* In its November 2012 Findings of Fact, Conclusions of Law and Order, the court disallowed portions of the Proof of

---

[3]   The 2005 Judgment and the 2006 Judgment are collectively defined as the "Judgments."

2

Claim. *Dkt. Nos. 280, 281; App*. at Ex. 4.  It also ruled, however, that Thompson was entitled to receive both (1) the attorney fee portion of the 2006 Judgment--even though her lawyer admitted that he, not Thompson, owned the awarded fees--and, (2) pre-judgment interest--even though the 2005 Judgment was "not a model of clarity" on the issue of interest.  *Tr*. at *26: 11-24; 29: 22-25; Dkt*. No. 280 at p. 13.

Wardley timely appealed these rulings. *Dkt. No.* 292.

**STATEMENT OF RELEVANT FACTS**

I.   **History of State Court Litigation between Thompson and WC.**

A.   **Judge Peuler Case**.

1.   Thompson's 2004 Amended Complaint in a state court lawsuit assigned to Judge Peuler ("Judge Peuler Case") sought to recover from WC an allegedly owed real estate sales commission in the amount of about $132,800. *App*. at Ex. 5.

2.   In a November 2005 trial in the Judge Peuler Case, the jury issued a  special verdict ("Special Verdict") awarding Thompson $46,000 of damages. *App*. at Ex. 6. The Special Verdict did not mention or award  pre-judgment interest. *Id*.

3.   Based on the Special Verdict, the 2005 Judgment for $46,000 was entered against WC. *App*. at  Ex. 1.  While the 2005 Judgment awarded "interest thereon at the rate of ten percent (10%) per annum as provided by law," it did not mention pre-judgment interest. *Id*. Instead--and consistent with Utah R. Civ. P. 58(e) that the clerk "must include in any judgment signed by him any interest on the verdict or decision from the time it was rendered"--the 2005 Judgment appears to assess interest on the $46,000 principal balance going forward. *Id*.   It is devoid of any indication that interest was being awarded for any period before the 2005 Judgment was entered. *Id*.

4.      Several months later, the 2006 Judgment was entered against WC for attorney fees in the amount of $32,147.50. *App.* at Ex. 2

5.      Thompson's lawyer at the time, Delano Findlay ("Findlay"), filed several papers in the Judge Peuler Case in which he asserted that he had an interest in the attorney fees awarded in the 2006 Judgment. [4]*App.* at Ex. 7;[5] *Tr.* at 27-29, *App.* at Ex. 8.

**B.      Judge Medley Case.**

6.      In 2007, Thompson filed a second state court lawsuit ("Judge Medley Case") against WC and its principal shareholder, Wardley. *Dkt. No.* 200 at p. 5, ¶ 22.

7.      In early 2009, Judge Medley granted Wardley's motion for Rule 11 sanctions against both Thompson and her lawyer, Findlay,  and entered a judgment ("Rule 11 Judgment") in Wardley's favor for attorney fees in the amount of $20,000, one-third (1/3) of which was assessed against Thompson, and two-thirds (2/3) of which was assessed against  Findlay. *App.* at Ex. 9.

8.      To collect the Rule 11 Judgment against Findlay,  Wardley levied upon several of Findlay's assets, including his entire interest in both the 2005 Judgment and the 2006 Judgment. *App.* at Ex. 10.

9.      At a July 2009 execution sale, Wardley acquired all of Findlay's rights in the two Judgments. *Id.* Specifically, Wardley levied upon and purchased through a $500 credit bid two categories of Findlay's assets: (a) "all [of Findlay's] accounts receivable," and (b) all of

---

[4] As noted in paragraphs 10, 19 and 20 below, (a) Findlay twice admitted at the 2012 evidentiary hearing on the objections to the Proof of Claim that he owned the entire right to all fees owed under the 2006 Judgment, *Tr.* at 26: 11-24; 29: 23-35 , and (b) Thompson expressly stipulated that Findlay had a "contingent fee interest in the Judgments." *Dkt. No.* 200 at p. 6, ¶ 27.

[5] All of the Findlay papers contained in this exhibit were admitted into evidence at the September 12, 2012 evidentiary hearing on Wardley's objections to Thompson's Proof of Claim.

Findlay's "right, title and interest in and to his contingent and/or other fee interest in monies paid for or an account of [the 2005 Judgment and the 2006 Judgment]." *Id.*

10.     Findlay concedes that all of the attorney fees awarded to Thompson under the 2006 Judgment belong to him, not Thompson. *Tr.* at 26: 11-24; 29: 22-25 (*App.* at Ex. 8).

## II.     History of WC Involuntary Bankruptcy Case.

### A.     Procedural Background.

11.     To collect the two Judgments, Thompson filed an involuntary bankruptcy petition against WC in August 2009. *Dkt. No. 1.*

12.     In August 2010, the bankruptcy court dismissed the involuntary petition. *Dkt. No. 105.*

13.     In December 2010--several months after the WC involuntary case was dismissed--an entity known as Gilbert Development Corporation ("Gilbert") paid Wardley $350,000 in full satisfaction of a judgment previously entered in favor of WC in an unrelated case. *Dkt. No.* 200 at p. 4, ¶¶ 19, 20.

14.     Several months later in August 2011, the bankruptcy court vacated its dismissal order. *Dkt. No.* 136.

15.     The court soon entered an order for relief under 11 U.S.C. § 303, and appointed George B. Hofmann as WC's trustee ("Trustee"). *Dkt. No.* 141.

### B.     The Trustee and Wardley Settle Potential Claims Relating to the Gilbert Payment.

16.     In 2012, the court approved an agreement between Wardley and the Trustee to settle potential claims relating to Wardley's receipt of the $350,000 payment from Gilbert. *Dkt. No.* 283. Under the settlement, Wardley paid $190,000 to the Trustee on the condition that

Wardley would be refunded any amounts remaining on deposit at the conclusion of the bankruptcy case. *Id.; Dkt. No.* 213 at p. 4 of Ex. A, ¶ 4.

### C.    The Bankruptcy Court Allows Portions of Thompson's Proof of Claim.

17.    Thomson filed her Proof of Claim in June 2012. *Claim No. 2-4*; *App. at Ex.4.*   It sought to recover $161,260, including the entire $32,147.50 attorney fee award under the 2006 Judgment and $43,555 of prejudgment interest under the 2005 Judgment. *Id.*

18.    Wardley filed detailed objections to the Proof of Claim in July 2012, and the court conducted an evidentiary hearing on the objections two months later. *Dkt. No. 251.*

19.    At the evidentiary hearing, Thompson's former lawyer (Findlay) twice admitted that he owned all attorney fees owed by WC under the 2006 Judgment;[6] that Thompson owned the costs awarded under the 2006 Judgment;[7] and that, strictly "on a legal basis," he agreed with Thompson's characterization (as reflected in her stipulation with the Trustee, *Dkt. No.* 200 at p. 6, ¶ 27) that he also had a contingent fee interest in "any recovery" under the Judgments.[8]

20.    Wardley adduced several categories of evidence to establish that he, not Thompson, owned Findlay's rights in the Judgments:

(a) a copy of the August 2009 Certificate of Sale evidencing Wardley's purchase at the execution sale of all of Findlay's accounts receivable and all rights in, and payments made on, the Judgments, *App.* at Ex. 10;

(b) a copy of Thompson's written stipulation with WC's Trustee that among the assets that Wardley purchased at the execution sale were all of Findlay's "right, title and interest, including [his] contingent fee interest in the Judgments," *Dkt. No. 200* at p. 6, ¶ 27, *Tr.* at 31: 18-25; 32: 1-4;

---

[6] *Tr.* at 26: 11-25; 27: 1, 2; 29: 22-25; 30: 1-4.
[7] *Id.* at 26: 18, 19; 30: 5-12.
[8] *Tr.* at 31: 24, 25; 32: 1-4.

(c) Findlay's admission that he was the owner of the $32,147.50 of attorney fees awarded under the 2006 Judgment, *Tr.* at 26: 11-25; 27: 1, 2; 29: 22-25; 30: 1-4 (*App.* at Ex. 8); and

(d) Findlay's admission that all amounts that Thompson owed to him at the time of the execution sale were an account receivable. *Id.* at 34: 3-22.

21.    The court, however, ruled that "[n]o documentation regarding Findlay's 'right, title and interest in and to his contingent and/or other fee interest in monies paid for or on account of ' the judgment was introduced" into evidence. *Dkt. No.* 280 at p. 4.

22.    Despite (a) Findlay's two testimonial concessions that all fees owed under the 2006 Judgment "belong[ed]" to him, *Tr.* at 26: 11-25; 27: 1, 2; 29: 22-25; 30: 1-4, and (b) his repeated written assertions in the Judge Peuler Case that he claimed an interest in the Judgments, *App.* at Ex. 6, the court found that he "disavowed any ownership interest in the Judgments," *Dkt. No.* 280 at p. 4.

23.    The Proof of Claim also sought to recover pre-judgment interest under the 2005 Judgment. *App.* at Ex. 4.  The court allowed this $43,555 portion of the Proof of Claim even though it determined that:

(a) the 2005 Judgment "is not a model of clarity," *Dkt. No.* 280 at p. 13;

(b) "[i]nterest was not included in the jury's calculation of damages," *id.*;

(c) "[t]he jury verdict was limited to determining the injury suffered by Thompson and did not address pre-judgment interest," *id.* at 14;

(d) the 2005 Judgment does not express or even imply the date on which such interest is to begin to run, *App.* at Ex. 1; and

(e) Thompson filed several post-judgment papers in the Judge Peuler Case which recognized that she had not been awarded pre-judgment interest. *App.* at Ex. 11.

7

## SUMMARY OF ARGUMENT

A creditor lacks legal standing to assert a proof of claim for amounts that have been acquired and are therefore owned by someone else. Here, Wardley purchased at a pre-petition execution sale Findlay's entire title to, and/or contingent fee interest in, the two Judgments that Thompson obtained against WC. Wardley's acquisition of Findlay's admitted interest in the Judgments means that Thompson cannot base her Proof of Claim on amounts previously owed to, and owned by, her lawyer. The bankruptcy court therefore erred in allowing the portion of the Proof of Claim that was based on the $32,147.50 attorney fee award in the 2006 Judgment.

The court also erred by allowing Thompson to recover, as part of her Proof of Claim, pre-judgment interest of more than $43,000. The inclusion of such interest under the 2005 Judgment--a judgment that the court found was "not a model of clarity"-- is incorrect for several reasons. First, the jury was never asked to award, and therefore did not award, such interest. This reality, by itself, is fatal to an award of interest by another court seven years later. Second, the 2005 Judgment itself is devoid of any reference to pre-judgment interest. While it does state that interest is awarded "at the rate of ten percent (10%) per annum as provided by law," it provides no clue as to when interest is to begin and does not identify any portion of the Special Verdict that purports to award pre-judgment interest. Third, Thompson herself repeatedly recognized throughout the Judge Peuler Case that she had not been awarded pre-judgment interest. She did so by filing several judgment collection papers that neither mentioned, let alone asserted, a right to prejudgment interest. Indeed, she even filed (but later withdrew) a motion in the Judge Peuler Case seeking to amend the 2005 Judgment to include pre-judgment interest.

The bankruptcy court, however, ignored this evidence. It concluded that Thompson could recover pre-judgment interest through her Proof of Claim, even though (1) the Special

Verdict "did not address pre-judgment interest," (2) the 2005 Judgment that Thompson and her counsel prepared was "not a model of clarity," (3) the 2005 Judgment is devoid of any reference to "pre-judgment interest" and provides no clue as to when in the distant past it began to run, and (4) Thompson repeatedly acknowledged in the Judge Peuler Case that she had not been awarded pre-judgment interest.

## ARGUMENT

### A.   The Bankruptcy Court Erred by Allowing Thompson to Recover Amounts that Were Not Owed to Her.

"A proof of claim is a written statement setting forth a creditor's claim." *Bankr. Rule 3001(a).* The term "claim" means a "right to payment." *11 U.S.C. § 101(5)(A).* In other words, "a 'claim' will exist if some prepetition conduct has occurred that will give rise to liability." 9C *Am. Jur. 2d, Bankruptcy* § 2537 (2006). To be enforceable, the creditor's claim must exist "at the time or before the order for relief" is entered against the debtor. *11 U.S.C. § 101(10)(A).*

Under section 502(b)(1) of the Bankruptcy Code, 11 U.S.C.§ 502(b)(1), a claim is to be disallowed when it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." As shown below, this "applicable law" includes the requirements that the creditor actually own the right to receive the debt underlying her proof of claim, and that the debtor actually owe what is claimed.

### 1.   Because Wardley Is the Owner of All Attorney Fees Owed under the Two State Court Judgments against WC, Thompson Has No Right to Recover These Fees through Her Proof of Claim.

It is a bedrock principle of litigation that a party seeking relief must have legal standing to enforce her claim. Thus, "[a] well-founded prudential-standing limitation is that litigants

cannot sue in federal court to enforce the rights of others." *RMA Ventures California v. SunAmerica Life Ins. Co.*, 576 F. 3d 1070, 1073 (10th Cir. 2009). "In other words, a [party's] standing is contingent upon the entitlement to enforce an asserted right." *Id.* at 1073. The requirement of standing extends to every phase of a case: a party "must continue to have standing throughout the litigation." *Lippoldt v. Cole,* 468 F. 3d 1204, 1216 (10th Cir. 2006).

The requirement of legal standing applies, of course, to a party asserting a proof of claim. For a creditor to have a "right to payment" that qualifies as a "claim" under section 101(5)(a) of the Bankruptcy Code, she must have legal standing to file and seek allowance of the proof of claim. *In re Melillo*, 392 B.R. 1, 4, 6 (B.A.P. 1st Cir. 2008) (claimant "must prove through sufficient evidence that it owns the account in question," because while Bankruptcy Rule 3001(e)(1) "allows a transferee to file a claim, it creates no presumption of ownership."); *In re Summerman,* 463 B.R. 47, 58 (Bankr. S.D. Ohio 2011) ("certainly it is true that a debtor may object to a proof of claim when the debtor has a valid basis for questioning the creditor's alleged ownership of the claim or the enforceability of the claim against the debtor outside of bankruptcy"); *In re Viencek*, 273 B.R. 354, 358 (Bankr. N.D.N.Y. 2002) (recognizing that, to have standing to assert a proof of claim, a creditor must have a direct "pecuniary interest" in the debt).

Here, the bankruptcy court erred in allowing Thompson to recover the portion of her Proof of Claim that was based on the $32,147.50 of fees awarded under the 2006 Judgment. Long before the order for relief was entered against WC, Wardley became the owner of all rights to receive payment of fees owed under the two Judgments. Specifically, it is undisputed that in mid-2009 Wardley obtained his Rule 11 Judgment against Thompson's former counsel (Findlay) in the principal amount of $13,333. *App.* at. Ex. 9. To collect the Rule 11 Judgment,

Wardley levied upon several of Findlay's assets, including all of his accounts receivable, his entire right, title and interest in the two Judgments, and all monies paid for or on account of the Judgments. *App.* at Ex. 10. At the July 2009 execution sale, Wardley acquired this entire bundle of Findlay's rights in the Judgments. *Id.* The ensuing Certificate of Sale conclusively evidences his complete ownership of these assets. *Id.*

Indeed, Utah law confirms that Wardley became the legal owner of every non-exempt asset of Findlay that was levied upon and sold. *Utah R. Civ. P.* 64E ("a writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment"); *Applied Med. Technologies, Inc. v. Eames*, 2002 UT 18, ¶ 11, 44 P. 3d 699 (under Rule 69 of the Utah Rules of Civil Procedure, "a sheriff or constable, pursuant to a writ of execution, may levy upon the non-exempt property and sell it at a sheriff's sale."). Once the sale is completed, the successful purchaser owns the levied-upon assets, and is "the new party [who] steps into the shoes of the former [owner]." *Eames*, 2002 UT, ¶ 17.

This means that from July 2009 forward, Wardley has been and is the sole legal and beneficial owner of every conceivable interest in the Judgments that Findlay previously owned. At a minimum, this interest includes (1) Findlay's rights as the owner of an account receivable owed by Thompson, (2) Findlay's rights as the admitted owner of the $32,147.50 of fees awarded under the 2006 Judgment, and (3) Findlay's right to receive all monies paid for or on account of the Judgment. *App.* at Ex. 10. The bankruptcy court erred in ignoring the legal reality that Wardley became the owner of this broad, all-encompassing collection of Findlay's legal and beneficial[9] rights in the Judgments and rights to monies paid on the Judgments. There is simply

---

[9] To be precise, Findlay expressly admitted at the September 2012 evidentiary hearing that, at the time of Wardley's levy of execution, all attorney fees owed under the 2006 Judgment "belong[ed]" to him. *Tr.* at 26: 11-25; 27: 1, 2; 29: 22-25; 30: 1-4 (*App.* at Ex. 8). This means that he was the <u>legal</u> owner of the fees. And given his and Thompson's admission that he had a contingent fee interest against any recovery, he also had a <u>beneficial</u> interest in

no factual basis for it conclusion that Findlay "disavowed any ownership interest in the judgments." *Dkt. No.* 280 at p. 4 (*App.* at Ex. 4).

Finally, the court's flawed substantive determination that Findlay had no ownership interest that Wardley acquired was compounded by a procedural error: it misconceived or misapplied the respective burdens of proof that Thompson and Wardley were required to carry. While Rule 3001(f) of the Bankruptcy Rules provides that a filed proof of claim creates a rebuttable presumption as to the validity and amount of the claim, *Bankr. R.* 3001(f), "[i]f objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim." *In re Harrison*, 987 F.2d 677, 680 (10th Cir. 1993). The objecting party (here, Wardley) is the beneficiary of this burden once he has "come forward with probative evidence of equal force" to what the creditor (Thompson) has provided to support her proof of claim. *In re Cluff*, 313 B.R. 323, 337 (Bankr. D. Utah 2004).

In this case, the bankruptcy court ignored this principle when it concluded that Wardley "failed to meet his burden." *Dkt. No.* 280 at p. 18. After all, Wardley adduced substantial probative evidence to rebut Thompson's effort to recover the $32,147.50 of fees awarded under the 2006 Judgment. This evidence--which cumulatively exceeds and is qualitatively superior to what Thompson provided-- includes:

1.    Findlay's sworn admission that these fees "belong[ed]" to him, i.e., that he owned the fees. *Tr.* at 26: 11-25; 27: 1, 2; 29: 22-25; 30: 1-4 (*App.* at Ex. 8).

---

the 2006 Judgment. *See, e.g., Lowe v. Experian*, 328 F. Supp. 2d 1122, 1129 (D. Kan. 2004) (A lawyer who has a contingent fee arrangement with his client "acquires a beneficial interest in the final award.") (quoting *Excel Corp. v. Jiminez,* 7 P. 3d 1118 (Kan. 2000)). Thus, as a matter of economic reality, it is the substance (here, Findlay's concessions that the fees awarded under the 2006 Judgment belong to him and not Thompson, and that he has a contingent fee interest in the Judgment) that should prevail over the form (here, Thompson's nominal designation as judgment creditor). cf, *Frank Lyon Co. v. United States*, 435 U.S. 561, 572-73 (1978); *In re Simon Transp. Services, Inc.,* 292 B.R. 207, 219 (Bankr. D. Utah 2003).

2.      Thompson's written stipulation and Findlay's sworn confirmation that he also had a contingent fee interest in the Judgments. *Dkt. No.* 200 at p. 6, ¶ 22; *Tr.* at 31: 24, 25; 32: 1-4.

3.      Findlay's many filed papers in the Judge Peuler Case that he had a substantial financial interest in the Judgments that was in need of judicial protection. *App.* at Ex. 7.

4.      The Certificate of Sale evidencing Wardley's purchase of, and title to, whatever ownership or other interest Findlay had in (a) the right to be paid the account receivable owed to him by Thompson, (b) the Judgments themselves, and (c) the right to collect all monies paid against or on account of the 2006 Judgment. *App.* at Ex. 10.

This combination of undisputed documentary and testimonial evidence that Wardley was entitled to receive the $32,147.50 of fees awarded under the 2006 Judgment compels the conclusion that Thompson lacked legal standing to recover these fees through her Proof of Claim. This evidence was, at the very least, of "equal force" to what Thompson provided to support the Proof of Claim. Her failure to provide any relevant rebuttal evidence, *see* Tr. at 40-46, means that, as a matter of law, she failed to discharge her burden of persuasion. *Cluff,* 313 B.R. at 337. The court erred in concluding otherwise.

**2.      Thompson Is Both Factually and Legally Precluded from Recovering Pre-Judgment Interest that Was Not Awarded under the 2005 Judgment.**

The bankruptcy court's additional decision to allow Thompson to recover more than $43,000 of pre-judgment interest is both legally and factually unsustainable.

Under Utah law, only special damages qualify for an award of pre-judgment interest. *See, e.g., Donatelli v. Beaumont,* 2009 UT App. 34, ¶¶ 5-7, 204 P.3d 201 (failure of general verdict form to specify special damages precluded award of pre-judgment interest even where awarded principal amount was identical to proven medical expenses); *Nielsen v. Spencer,* 2008 UT App. 375, ¶ 32, 196 P.3d 616 (pre-judgment interest not recoverable because "without an

express designation of the $95,000 as an award of prior attorney fees on the special verdict form, we cannot simply assume that the $95,000 represents an award of attorney fees rather than general damages.").

This principle is fatal to the recovery of pre-judgment interest through the Proof of Claim. After all, as even the bankruptcy court observed, "the jury verdict was limited to determining the injury suffered by Thompson and did not address pre-judgment interest," and "interest was not included in the jury's calculation of damages." *Dkt. No.* 280 at 13, 14. The Special Verdict confirms this reality. *App.* at Ex. 6. Nowhere does it mention special damages. *Id.* Nowhere does it reference pre-judgment interest. *Id.* Nowhere does it explain how the jury decided to award $46,000 in the face of Thompson's claim that she was entitled to $132,800. *Id.*; *App.* at Ex. 5. And nowhere does it suggest when or how the awarded (non-special) damages were sufficiently complete to somehow qualify for an interest award under Utah law.

The unavailability of pre-judgment interest under Utah substantive law is exacerbated by the form of the 2005 Judgment that Thompson's lawyer (Findlay) prepared. Criticizing it as "not a model of clarity," *Dkt. No.* 280 at 13, the court "considered referring the judgment back to the State Court for clarification," but decided "because the case judge [Judge Peuler] is no longer on the bench, there is little benefit" in doing so." *Id.* The court then concluded that even though the Special Verdict mentioned neither special damages, generally, nor pre-judgment interest, specifically, the Judgment's reference to a ten percent interest rate is "consistent with pre-judgment interest provided by law and is inconsistent with post-judgment interest provided by law." *Id.* at 14.

What the court overlooked, however, is that not only was the Special Verdict devoid of any reference to special damages or pre-judgment interest, the Judgment's reference to a ten

percent rate is entirely consistent with the clerk's obligation under Rule 58(e) of the Utah Rules of Civil Procedure that he "must include in any judgment signed by him any interest on the verdict or the decision from the time it was rendered." *Utah R. Civ. P. 58(e).* In other words, the Judgment could reasonably and plausibly be interpreted to assess interest on the $46,000 principal balance going forward. This means that the Judgment is, at the very least, ambiguous. As such, it should have been construed against its drafter--Thompson and Findlay. *See, Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239, 243 (Utah App. 1991) ("[a]n ambiguous judgment is subject to construction according to the rules that apply to all written instruments.") (quoting *Park City Corp. v. Ensign*, 586 P.2d 446,448 (Utah 1978)). "Any ambiguity is corrected by adopting the construction which "brings the judgment into harmony with the facts and the law." *Lytle*, 806 P.2d at 243 (quoting *Moon Lake Water Users Ass'n v. Hanson*, 535 P.2d 1262, 1264 (Utah 1975)). The court erred by not doing so.

This outcome--denial of pre-judgment interest--is consistent with Thompson's own understanding of what she was awarded: She repeatedly acknowledged throughout the Judge Peuler Case that she was not entitled to pre-judgment interest. Specifically, she filed many judgment collection papers that neither mentioned nor asserted a right to prejudgment interest. *See,* August 15, 2006 [Judgment] Information Statement, *App.* at Ex. 11 (confirming amount of 2005 Judgment as $46,000 with no reference to pre-judgment interest); Amended [Judgment] Information Sheet, *id.* (same); July 13, 2009 Second Motion and Order in Supplemental Proceedings, *id.* (stating that the 2005 Judgment was "in the amount of $46,000, of which $46,000 is still unpaid."); July 14, 2009 Application for Writ of Execution, *id.* (stating that the combined original amount of the two Judgments was $79,008.85, i.e., $46,000 under the 2005 Judgment and $33,008.25 under the 2006 Judgment); September 16, 2010 Writ of Garnishment,

*id.* (certifying that "after calculation of interest, costs and payments, the judgment debtor owes $79,291.35" under the Judgments). These papers, in summary, show that Thompson knew the 2005 Judgment did not award pre-judgment interest. This knowledge precluded her from taking a contrary position in her Proof of Claim.

Finally, it was apparently this uncertainty about whether pre-judgment interest had been awarded that prompted Thompson to file in December 2010--long before her Proof of Claim was lodged--a "Motion for Amendment or for Clarification" of the 2005 Judgment ("Amendment Motion"). *App.* at Ex. 12. The Amendment Motion was brought under Rule 60(a). *Id.* However, because it sought to effect a substantive revision or amendment based on mistake or inadvertence, WC argued that the proper procedural basis for its filing was Rule 60(b) which, by 2010, was time-barred. *App.* at Ex. 13. Thompson apparently agreed when, on the eve of the long-scheduled hearing on the Amendment Motion, she suddenly withdrew it. *App.* at Ex. 14. The bankruptcy court, however, ignored this event in ruling that, despite Thompson's own recognition that the 2005 Judgment did not clearly include pre-judgment interest, such interest was nonetheless recoverable under the Proof of Claim. It erred in not holding Thompson to the terms of her own conduct.

## CONCLUSION

The bankruptcy court's decision to overrule Wardley's objections to the Proof of Claim is both factually and legally unsustainable. In allowing Thompson to recover attorney fees that her lawyer conceded he owned, the court overlooked the essential requirement of legal standing. This improperly enabled Thompson to enforce a $32,147.50 debt that she did not own. The court also erred in allowing Thompson to recover pre-judgment interest in excess of $43,000.

This interest was unrecoverable under Utah law and, therefore, not awardable under the 2005 Judgment.

This Court should reverse these rulings and thereby reduce the allowed portion of the Proof of Claim by $ 75,702.50.

RESPECTFULLY SUBMITTED:  January 4, 2013.

ANDERSON & KARRENBERG, P.C.

John T. Anderson
50 West Broadway, Suite 700
Salt Lake City, Utah  84101
Telephone (801) 534-1700
Facsimile (801) 364-7697
janderson@aklawfirm.com
**Counsel for Appellant, Lynn Wardley**

17

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of January, 2013, I electronically filed the foregoing **BRIEF OF APPELLANT** with the Clerk of the Court using the CM/ECF system, which sent a notice of electronic filing to all parties whose names appear on the electronic mail notice list for this case.

I further certify that on the 4th day of January, 2013, I caused a true and correct copy of the foregoing **BRIEF OF APPELLANT** to be delivered by United States mail to each of the following recipients:

Cindy L. Thompson
1718 West Joust Ct.
Salt Lake City, Utah  84116

Delano S. Findlay
P.O. Box 57721
Murray, UT 84107

George B. Hofmann
PARSONS, KINGHORN, HARRIS, P.C.
111 East Broadway, Suite 1100
Salt Lake City, Utah 84111
