IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LYNN WARDLEY,<br>Appellant,<br><br>vs.<br><br>WARDLEY CORPORATION; CINDY L. THOMPSON; DELANO S. FINDLAY,<br>Appellees. | MEMORANDUM DECISION AND ORDER ON BANKRUPTCY APPEAL<br><br>Case No. 2:12-CV-1075 TS |

This case arises out of Appellant Lynn Wardley's appeal of the Bankruptcy Court's decision to allow certain portions of a proof of claim filed by Appellee Cindy Thompson. For the reasons discussed below, the decision of the Bankruptcy Court will be affirmed.

I. STANDARD OF REVIEW

"Questions of law are reviewed de novo, questions of fact are reviewed for clear error, and matters of discretion are reviewed for abuse of discretion."[1]

[1] *Turner v. Turner (In re Turner)*, 266 B.R. 491, 493 (BAP 10th Cir. 2001) (citing *Pierce v. Underwood*, 487 U.S. 552, 558 (1988)).

II. BACKGROUND

Appellee Cindy Thompson ("Thompson") filed suit in state court against Debtor Wardley Corporation (the "Corporation") seeking to recover money allegedly owed as a real estate sales commission. After a jury trial, Thompson was awarded a judgment of $46,000 "together with interest thereon at the rate of ten percent (10%) per annum as provided by law" (the "2005 Judgment").[2] An order was later entered awarding Plaintiff attorney's fees and costs. Specifically, Plaintiff was "awarded a judgment for attorney's fees and costs in the amount of $33,008.85" (the "2006 Judgment").[3]

In 2007, Thompson brought another suit, this time against the Corporation and its principal shareholder, Appellant Lynn Wardley ("Appellant" or "Wardley"). That case was disposed of after the state court entered Rule 11 sanctions against Thompson and her counsel, Delano Findlay.[4] Relevant here, a judgment was entered against Findlay in the amount of $13,333, plus interest (the "Findlay Judgment").[5]

To collect on the Findlay Judgment, Wardley levied upon several of Findlay's assets, including his interest in the 2005 and 2006 Judgments. At an execution sale in July 2009, Wardley acquired all of Findlay's accounts receivable and all of his "right, title, and interest in

---

[2]Docket No. 9, Ex. 1.

[3]*Id*., Ex. 2.

[4]Mr. Findlay was named as an appellee in this action, but indicates that he is not a party to this appeal and his inclusion in the caption was a mistake. *See* Docket No. 30.

[5]Docket No. 9, Ex. 9.

and to his contingent and/or other fee interest in monies paid for or on account of" the 2005 and 2006 Judgments.[6]

To collect on her own judgments, Thompson filed an involuntary bankruptcy petition against the Corporation. The involuntary petition was dismissed, but the dismissal was later vacated and George B. Hofmann (the "Trustee") was appointed as trustee.

In 2012, the Bankruptcy Court approved a settlement agreement between Wardley and the Trustee. Under the agreement, Wardley agreed to pay $190,000 to the Trustee in exchange for the Trustee agreeing to release certain claims that the bankruptcy estate may have against Wardley. Any surplus funds at the conclusion of the bankruptcy case would return to Wardley, as the sole equity interest holder in the Corporation.

During the bankruptcy proceedings, Thompson filed various proofs of claim. On June 15, 2012, Thompson filed her third amended proof of claim.[7] Wardley objected to Thompson's proof of claim arguing, among other things, that Thompson should not be allowed prejudgment interest on the 2005 Judgment and that the portion of the 2005 and 2006 Judgments owned by Findlay had been acquired by Wardley and, thus, should be deducted from Thompson's claim.

The Bankruptcy Court overruled Wardley's objections and allowed Thompson an unsecured claim in the amount of $132,136.99. Appellant Wardley now appeals.[8]

---

[6]*Id*., Ex. 10.

[7]*Id*., Ex. 3.

[8]Thompson also filed an appeal, which was consolidated into this case. However, she has not filed her own brief on appeal, only a brief responding to Appellant's arguments.

## III. DISCUSSION

Appellant presents two issues in his appeal. Appellant first argues that the Bankruptcy Court erred in allowing the portion of Thompson's proof of claim that sought to recover attorney's fees. Appellant also argues that the Bankruptcy Court erred in allowing Thompson to recover prejudgment interest on the 2005 Judgment. Both arguments will be discussed below.[9]

### A. OWNERSHIP OF THOMPSON'S CLAIM

Wardley first argues that the Bankruptcy Court erred in allowing Thompson to recover amounts that he argues were not owed to her. Wardley states that, before the order for relief was entered against the Corporation, he became the owner of all rights to receive payment of fees owed under the 2005 and 2006 Judgments. As a result, he argues that Thompson had no right to recover these fees.

As set forth above, the 2005 Judgment awarded Thompson $46,000 and the 2006 Judgment awarded her a judgment for attorney's fees and costs in the amount of $33,008.85. Wardley later received a judgment against Thompson and Findlay. At an execution sale, Wardley acquired all of Findlay's accounts receivable and all of his "right, title, and interest in and to his contingent and/or other fee interest in monies paid for or on account of" the 2005 and 2006 Judgments.[10] As a result, Appellant argues that he "acquired th[e] entire bundle of Findlay's rights in the Judgments" and, as a result, "has been and is the sole legal and beneficial

[9]Thompson argues that Wardley lacks standing to object to her proof of claim. However, as Thompson has not appealed the Bankruptcy Court's decision on this issue, it will not be addressed.

[10]Docket No. 9, Ex. 10.

owner of every conceivable interest in the Judgments that Findlay previously owned."[11] Based on this, Wardley argues that the Bankruptcy Court erred in allowing Thompson's claim as to the fees.

Appellant first argues that Thompson lacks standing to enforce her claim. The Court disagrees. Thompson is the only person named in the Judgments against the Corporation. Therefore, she clearly has standing to assert a claim against the Corporation in the bankruptcy proceeding.

Appellant further argues that he is the owner of at least a portion of the Judgments, because he acquired Findlay's interest in the Judgments. At the hearing on Thompson's proof of claim, Findlay testified that he believed that the fees belonged to him. However, Findlay's subjective belief does not make this so. Rather, the determination of what interest Findlay had in the Judgment is determined by Utah law.

Under Utah law, "[a]n attorney shall have a lien for the balance of compensation due from a client on any money or property owned by the client that is the subject of or connected with work performed for the client, including . . . any . . . judgment in the client's favor in any matter or action in which the attorney assisted, including any proceeds derived from the matter or action . . . ."[12] The lien "commences at the time of employment of the attorney by the client."[13] "An attorney may enforce a lien under this section by moving to intervene in a pending legal

---

[11]Docket No. 9, at 11.

[12]Utah Code Ann. § 38-2-7(2)(c).

[13]*Id.* § 38-2-7(3).

action in which the attorney has assisted or performed work, or by filing a separate legal action."[14] An attorney may file a notice of lien in a pending legal action. "In addition, an attorney may file a notice of lien with the county recorder of the county in which real property that is subject to a lien under this section is located."[15]

Based on these provisions, Findlay's only interest in the 2005 and 2006 Judgments was, at most, that of an unperfected attorney's lien. While Wardley acquired all of Findlay's accounts receivable, as well as his right, title, and interest in the Judgments, he could not acquire anything more than that which was owned by Findlay. Thus, while Wardley may have an interest in the Judgments, he does not own any portion of the Judgments. Therefore, Wardley's argument that he was the owner of at least a portion of the 2005 and 2006 Judgments was properly rejected by the Bankruptcy Court.

Wardley takes issue with the Trustee and the Bankruptcy Court's focus on the security Findlay could have pursued, while ignoring the underlying debt. This argument, however, misstates the focus of the Bankruptcy Court. The Bankruptcy Court focused on the *ownership* of the Judgments because that was the issue before that court.

The Bankruptcy Court specifically declined to resolve the issue of what interest Findlay (and subsequently Wardley) had because that issue was not before the court. The Bankruptcy Court stated:

---

[14] *Id.* § 38-2-7(4).

[15] *Id.*

> Wardley's claim of ownership in the 2005 Judgment and the 2006 Judgment is not supported by the evidence. It is not at all clear that Findlay had any interest in the judgments at the time of Wardley's execution or the amount of that interest. But the Court does not need to resolve that question because what is clear is that any interest Findlay had was, at most, a lien interest, not an ownership interest. The extent and amount of a lien interest in Thompson's allowed claim is not an issue that needs to be resolved by this Court in this case.[16]

For the reasons discussed above, the Bankruptcy Court's ruling on the issue of ownership was correct. It may be the case that Findlay had some interest in the Judgments, an interest that has now been acquired by Appellant. However, this is an issue between Appellant and Thompson. This interest, whatever it may be, must be distinguished from Thompson's claim against the bankruptcy estate. Wardley has provided nothing to suggest that the Bankruptcy Court is the proper place for him to litigate any claim he may have against Thompson that was acquired from Findlay. Thus, this is not an issue to be resolved in this case.

## B. PREJUDGMENT INTEREST

The Bankruptcy Court allowed $43,555.07 in prejudgment interest on the 2005 Judgment. Appellant argues that this decision is legally and factually unsustainable.

As stated, the 2005 Judgment awarded Thompson $46,000 "together with interest thereon at the rate of ten percent (10%) per annum as provided by law."[17] Since the 2005 Judgment does not specifically indicate whether the 10% interest rate should apply pre- or post-judgment, the Bankruptcy Court was tasked with interpreting the Judgment.

---

[16]Docket No. 9, Ex. 4, at 18.

[17]Docket No. 9, Ex. 1.

The Bankruptcy Court began with the provisions of the Utah Code. Utah Code Ann. § 15-1-1(2) provides that "[u]nless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum."[18] A different interest rate applies to interest on judgments: "civil . . . judgments of the district court and justice court shall bear interest at the federal postjudgment interest rate as of January 1 of each year, plus 2%."[19]

The Bankruptcy Court found that the reference in the 2005 Judgment to the 10% interest rate was "consistent with pre-judgment interest provided by law and is inconsistent with post-judgment interest provided by law."[20] Therefore, the Bankruptcy Court concluded the 2005 Judgment included prejudgment interest at the rate of 10% per annum that began to accrue on June 28, 1996 (the date of the real estate transaction at issue in the underlying state court case), and continuing through December 13, 2005 (the date of the 2005 Judgment).

Appellant Wardley makes several arguments in support of his claim that the Bankruptcy Court erred in allowing prejudgment interest. First, Wardley argues that, since the jury did not assess special damages in the verdict, Thompson cannot recover prejudgment interest. In support of this argument, Wardley points to *Donatelli v. Beaumont*,[21] and *Nielsen v. Spencer*.[22]

---

[18]Utah Code Ann. § 15-1-1(2).

[19]*Id*. § 15-1-4(3)(a).

[20]Docket No. 9, Ex. 4, at 14.

[21]204 P.3d 201 (Utah Ct. App. 2009).

[22]196 P.3d 616 (Utah Ct. App. 2008).

Both of these cases addressed prejudgment interest under a specific Utah Code section dealing with personal injury judgments. Specifically, Utah Code Ann. § 78B-5-824, formerly § 78-27-44, provides:

> (1) In all actions brought to recover damages for personal injuries sustained by any person, caused by the negligence or willful intent of another person, corporation, association, or partnership, and whether the injury was fatal or otherwise, the plaintiff in the complaint may claim interest on special damages actually incurred from the date of the occurrence of the act giving rise to the cause of action.
> (2) It is the duty of the court, in entering judgment for plaintiff in that action, to add to the amount of special damages actually incurred that are assessed by the verdict of the jury, or found by the court, prejudgment interest on that amount calculated at 7.5% simple interest per annum, from the date of the occurrence of the act giving rise to the cause of action to the date of entering the judgment, and to include it in that judgment.

The suit that resulted in the 2005 Judgment was not an action "to recover damages for personal injuries;" it was a contract action. Thus, this section has no application to the instant matter. Rather, "[p]rejudgment interest is appropriate when the loss ha[s] been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages."[23] In the underlying case, the state court complaint contained a clear date on which the alleged breach occurred and the amount of loss could be calculated with accuracy. Therefore, the Court finds nothing that would prohibit an award of prejudgment interest.

Wardley further argues that the 2005 Judgment is ambiguous and that any ambiguity should be construed against its drafters: Thompson and Findlay. The Court agrees with the

---

[23] *Winward v. Goodliffe*, 263 P.3d 493, 498 (Utah Ct. App. 2011) (quotation marks and citation omitted).

Bankruptcy Court's assessment that the 2005 Judgment "is not a model of clarity."[24] However, interpreting that Judgment as awarding prejudgment interest is the only reading that comports with Utah law and gives meaning to what was ordered by the state court. Thus, while the 2005 Judgment could have been more clear on the issue, this fact does not prevent the Court from allowing prejudgment interest.

Wardley finally argues that Thompson "repeatedly acknowledged . . . that she was not entitled to pre-judgment interest."[25] This statement goes too far. It is true that Thompson filed documents in state court that did not mention prejudgment interest. It is also true that Thompson later sought clarification as to whether prejudgment interest was awarded. These facts, however, do not show that prejudgment interest was not awarded, only that the 2005 Judgment was "not a model of clarity." Therefore, the Court affirms the Bankruptcy Court on this ground.

## IV. CONCLUSION

Based on the above, the decision of the Bankruptcy Court is AFFIRMED. The Clerk of the Court is directed to close this case forthwith.

DATED June 5, 2013.

BY THE COURT:

TED STEWART
United States District Judge

---

[24]Docket No. 9, Ex. 4, at 13.

[25]Docket No. 9, at 15.